Argued and submitted September 30, 2015; reversed on Counts 1, 15, 34, 35, 47, 59, 61, 63, 64, and 71, remanded for resentencing, otherwise affirmed November 9, 2016; petition for review denied March 30, 2017 (361 Or 311)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## THOMAS JOSEPH BERNDT, II,
*Defendant-Appellant.*

Multnomah County Circuit Court
120230889; A154683

386 P3d 196

Kristin A. Carveth, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Susan G. Howe, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.

## ARMSTRONG, P. J.

On multiple occasions, defendant, who was a member of Bally's gym, went into the men's locker room at different Bally's facilities in the Portland area, broke into lockers belonging to other Bally's members, and stole various pieces of identification, including driver licenses, credit cards, and checkbooks from the lockers. He later—often the same day—made fraudulent purchases with the stolen items. Defendant also stole some members' car keys out of their lockers, and he stole one member's car. For that conduct, he was tried and convicted in Multnomah County of six counts of burglary in the second degree, ORS 164.215 (Counts 1, 15, 35, 47, 59, 71),[1] 34 counts of identity theft, ORS 165.800 (Counts 2, 5, 8, 11, 14, 17, 23, 26, 29, 32, 34, 37, 40, 43, 46, 48, 49, 52, 55, 58, 61, 63, 64, 69, 70, 72, 75, 78, 81, 84, 87, 90, 93, and 95), and a variety of other crimes, including first-, second-, and third-degree theft, fraudulent use of a credit card, second-degree forgery, unauthorized use of a vehicle, and aggravated identity-theft. He appeals the resulting judgment, raising 46 assignments of error, all of which relate to his second-degree burglary and identity-theft convictions. In a *pro se* supplemental brief, defendant raises an additional assignment of error, which we reject without discussion.[2] As explained below, we reverse as to the burglary counts (Counts 1, 15, 35, 47, 59, and 71) and four of the identify-theft counts (Counts 34, 61, 63, and 64), and remand for resentencing; otherwise, we affirm.

We begin with second-degree burglary. In his first through eighth assignments of error, defendant contends that the trial court erred in denying his motion for judgment of acquittal (MJOA) on the second-degree burglary charges

---

[1] Defendant was also found guilty by the jury of two additional second-degree burglary counts—Counts 56 and 62—but the court merged those guilty verdicts with other counts (specifically, the court merged the guilty verdict on Count 56 with the guilty verdict on Count 47 and merged the guilty verdict on Count 62 with the guilty verdict on Count 59). The court dismissed two additional counts of second-degree burglary—Counts 33 and 94—on the state's motion after the jury could not reach a lawful verdict on those counts.

[2] In that assignment of error, defendant asserts that the trial court erred in not dismissing additional charges that were brought when the state re-indicted defendant after a mistrial, arguing that the state's action constituted "prosecutorial vindictiveness" in violation of due process.

for which he was found guilty because, contrary to the state's theory of prosecution, he "[did] not lose his license or privilege to remain on [Bally's] premises merely by forming an intent to commit a crime" (boldface omitted), and, therefore, the state did not prove that element of the offenses.[3]

In reviewing the denial of an MJOA, "[w]e view the evidence in the light most favorable to the state to determine whether a rational trier of fact, making reasonable inferences, could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). Here, there is no dispute about the facts; the question is purely a legal one.

Each of the second-degree burglary charges alleged that defendant "did unlawfully and knowingly enter and remain in a building located at [referencing the address of the relevant Bally's gym] with the intent to commit the crime of Theft therein[.]" At the close of the state's case at trial, defendant moved for an MJOA on those charges, arguing that the evidence demonstrated that he was not on Bally's premises unlawfully, that he "wasn't otherwise trespassing," but had permission to be there, and, consequently, the state failed to prove the elements of second-degree burglary. The state's theory in response was that defendant was unlawfully present in the Bally's men's locker rooms because he exceeded the scope of his license to be there, granted by Bally's as a consequence of his gym membership, when he broke into other members' lockers.[4] The trial court agreed with the state and denied defendant's MJOA on that basis. On appeal, the parties essentially reprise their arguments.

ORS 164.215(1) provides that a person commits the crime of second-degree burglary "if the person enters or remains unlawfully in a building with intent to commit a crime there in." It is an aggravated form of criminal trespass (ORS 164.245; ORS 164.255), which is committed by entering or remaining unlawfully on premises. *State v. Werner*, 281 Or App 154, 162, 383 P3d 875 (2016); *State v.*

---

[3] The definition of second-degree burglary is set out below. 282 Or App at 76.

[4] The state also argued that a locker was its own "building" for purposes of the burglary statute. The trial court rejected that argument, and the state does not renew it on appeal.

*Sanchez-Alfonso*, 224 Or App 556, 561, 198 P3d 946 (2008), *rev den*, 346 Or 258 (2009) ("First-degree criminal trespass becomes second-degree burglary, ORS 164.215, * * * if the premises entered is a building and the person enters or remains in it with the intent to commit a crime therein."). The phrase "enter or remain unlawfully," for purposes of ORS 164.215(1), and as pertinent here, is defined to mean "[t]o enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public *and when the entrant is not otherwise licensed or privileged to do so*." ORS 164.205(3)(a) (emphasis added).[5]

In *Werner*, decided after trial and appellate briefing in this case, the state argued that, "if a person with permission to be in a building commits an unauthorized crime in the building, the person is guilty not only of the crime, but also of burglary," 281 Or App at 163-64, in other words, that the defendant was guilty of burglary when he committed another crime while licensed to be in the building. We rejected that theory, concluding that it was inconsistent with the legislature's definition of burglary in that "[i]t fails to treat burglary as a separate, earlier crime than the crime intended to be committed in the building * * * even though the legislature intended burglary to be separate from (and not dependent upon) the subsequent commission of the intended crime." *Id.* at 164. As we explained, "[i]f, as the state argues, the commission of a crime is what causes a person who is otherwise licensed to be present in a building to become a trespasser, then the person is not trespassing with the intent to commit that crime." *Id.* The state makes the same argument here; in light of our holding in *Werner*, we reject it.

The state also argues that defendant did not exceed the scope of his license to be on the Bally's premises *"solely"* because he formed the intention to commit a crime inside the facilities, but that "he became a trespasser once he acted outside the scope of his license, regardless of the criminality of his subsequent conduct." (Emphasis in original.)

---

[5] ORS 164.205(3) was amended in 2015, after the conduct at issue here, *see* Or Law 2015, ch 10, § 1; however, the amendment does not affect our analysis. Thus, we quote the current version of the statute.

According to the state, a rational juror could find that defendant's membership agreement permitted him to use the facilities for physical exercise—and, as we understand the state's point, anything outside of that would exceed the scope of his license, making him a trespasser. The flaws in that reasoning are readily apparent—for example, would a member become a trespasser simply by lingering in the gym after a workout to talk with a friend? In any event, the only conduct on which the state relied at trial to assert that defendant had acted outside the scope of his license, and therefore unlawfully remained on the premises, was his commission of a crime. Nor did the state introduce into evidence the membership agreement or other evidence that would establish the factual predicate for the state's thesis. Accordingly, here, as in *Werner*, we reject the state's argument that the commission of a crime converted defendant's lawful entry into Bally's into an "unlawful remaining" for purposes of the burglary statute. *See also State v. Gordon*, 281 Or App 654, 383 P3d 942 (2016) (same).

Alternatively, the state argues that it "introduced sufficient evidence that defendant unlawfully entered Bally's Gym because he obtained Bally's consent through means of trickery, artifice or deception." (Boldface omitted.) In the state's view, a factfinder could infer from the evidence that defendant fraudulently obtained his Bally's membership for the purpose of gaining easy access to the men's locker room to commit crimes. And, according to the state, "[w]hen a person enters a building that is not open to the public by fraudulent means, he has 'enter[ed] or remain[ed] unlawfully,' as defined by ORS 16[4].205, because he has entered without any valid 'license or privilege' to do so." (Second and third brackets in original.) Whatever the legal merits of that argument—a question on which we express no comment—we do not consider it, because it is not an appropriate alternative basis for us to affirm the trial court in this case.

We may, in our discretion, affirm a trial court on a "right for the wrong reason" basis when certain conditions are met. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001).

"The first condition is that, if the question presented is not purely one of law, then the evidentiary record must be sufficient to support the proffered alternative basis for affirmance. That requires: (1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below."

*Id.* Here, had the state raised its alternative theory below, defendant might very well have created a different record, offering, perhaps, evidence of when defendant obtained his membership, his activities there, and his record of attendance, among other things. Thus, at the very least, the third condition for affirming the trial court on a "right for the wrong reason" basis has not been satisfied.

In sum, we agree with defendant that the trial court erred in denying defendant's MJOA with respect to second-degree burglary, and we reverse as to those counts (Counts 1, 15, 35, 47, 59, and 71).

Next, in assignments of error 9 through 42, defendant contends that the trial court erred in instructing the jury as to the 34 identity-theft charges against him. As to all of those counts, the jury was instructed that the state had to prove that defendant, "acting with the intent to deceive or to defraud, obtained, possessed, transferred, created, uttered, or converted to the person's own use the personal identification of another person."[6] Defendant contends that, with respect to Counts 2, 17, 34, 37, 48, 49, 58, 61, 63, 64, 72, and 95, the indictment alleged only that he "did unlawfully, with intent to deceive and defraud, *obtain* personal identification of [the respective victim]." (Emphasis added.) And, conversely, with respect to Counts 5, 8, 11, 14, 23, 26, 29, 32, 40, 43, 46, 52, 55, 69, 70, 75, 78, 81, 84, 87, 90, and 93, the indictment alleged that he "did unlawfully, with intent to deceive and defraud, possess, transfer, create, utter, and convert to defendant's own use personal identification of [the

---

[6] The court gave a single jury instruction that applied to all 34 counts of identity theft.

respective victim]"—that is, the indictment did not charge that he "obtained" the personal identification of the other person. Therefore, defendant asserts, the trial court erred in instructing the jury on all of the identity theft counts because, with respect to each count, the instruction included a theory or theories not charged in the indictment. Defendant acknowledges that he did not preserve those claims of error; however, he asks us to exercise our discretion under ORAP 5.45(1) to review them as plain error.

We decline the invitation. Not only did defendant not object to the court's instruction, defendant actually requested the precise language that he now challenges. With respect to the counts of identity theft, defendant requested UCrJI No. 1832, as follows:

"Oregon law provides that a person commits the crime of identity theft if that person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters, or converts to the person's own use the personal identification of another person.

"In this case, to establish the crime of identity theft, the state must prove beyond a reasonable doubt the following three elements:

"(1)   The act occurred in Multnomah County, Oregon;

"(2)   The act occurred on or about [the charged date]; and

"(3)   *[Defendant], acting with the intent to deceive or to defraud, obtained, possessed, transferred, created, uttered, or converted to the person's own use the personal identification of another person.*"

(First brackets in original; second brackets and emphasis added.) Defendant thus invited the errors of which he now complains, and we therefore do not consider them. *State v. Kammeyer*, 226 Or App 210, 213, 203 P3d 274, *rev den*, 346 Or 590; *id.* at 214 ("Under the invited error doctrine, a party who 'was actively instrumental in bringing about' an alleged error 'cannot be heard to complain, and the case ought not to be reversed because of it.'" (Quoting *Anderson v. Oregon Railroad Co.*, 45 Or 211, 216-17, 77 P 119 (1904)).

We turn to assignments of error 43 through 46, in which defendant contends that the court erred in denying his MJOA on four of the identify-theft counts—specifically, Counts 34, 61, 63, and 64—based on the state's failure to prove venue in Multnomah County. As to each of those counts, defendant was charged with identity theft for obtaining and possessing the personal identification of another person; the indictment alleged that the conduct occurred in the "Counties of Multnomah and Clackamas, State of Oregon" and further alleged that "the defendant exerted control over the property that was the subject of the crime in Multnomah County." At trial, the uncontested evidence pertaining to those counts was that defendant stole the personal identification of others from lockers at the Milwaukie Bally's, located in Clackamas County, and that the alleged victims' personal identification were recovered from defendant's residence, located in Multnomah County.

In response to defendant's challenge to those identity-theft counts based on venue, the state relied on ORS 131.315(7), which provides that "[a] person who commits theft, burglary or robbery may be tried in any county in which the person exerts control over the property that is the subject of the crime." The trial court agreed with the state that venue was proper under that statute and denied defendant's MJOA.

On appeal, the parties ultimately agree that, although the case was tried before the Supreme Court's decision in *State v. Mills*, 354 Or 350, 312 P3d 515 (2013), which altered the framework for challenging venue,[7] reversal and remand for an evidentiary hearing for defendant to challenge venue is not required because the pertinent

---

[7] In *Mills*, the Supreme Court held that, contrary to its earlier decisions, venue was not a material allegation that must be proved by the state beyond a reasonable doubt, 354 Or at 370-71, but, rather, was "a matter of personal right, which—like other constitutional rights—may be forfeited if not timely asserted," *id.* at 371. Accordingly, to avoid waiving the right, a defendant must raise the issue in a pretrial motion. *Id.* at 371-73. However, the court also held in *Mills* that "it would be unfair to [the] defendant to hold that he forfeited the opportunity to challenge venue, in light of the fact that the law in effect at the time of trial permitted him to wait until the state rested to raise the issue," and it reversed and remanded to give the defendant the opportunity for an evidentiary hearing to contest venue. *Id.* at 373-74.

facts are undisputed and the issue is purely a legal one—whether, properly understood, ORS 131.315(7) permitted the prosecution of the Clackamas County identity-theft charges in Multnomah County. We agree with the parties that remand is unnecessary, and, as explained below, we conclude that ORS 131.315(7) did not provide a basis for venue in Multnomah County for prosecution of Counts 34, 61, 63, and 64. Accordingly, the trial court erred in denying defendant's MJOA on those counts.

Again, ORS 131.315(7) provides that "[a] person who commits *theft*, burglary or robbery may be tried in any county in which the person exerts control over the property that is the subject of the crime." (Emphasis added.) The state argues that "[i]dentity theft is a crime of theft; it is a specific way of committing theft that involves another person's personal identification." And, because the state introduced sufficient evidence that defendant exercised control of the victims' personal information—the "property" that is the subject of the theft—in Multnomah County, venue was proper in Multnomah County in its view under ORS 131.315(7). Defendant disagrees, arguing that a proper understanding of "theft," as used in ORS 131.315(7), does not include identity theft and, therefore, the statute does not provide a basis for venue in Multnomah County. We agree with defendant.

ORS 131.315(7) was enacted in 1973, *see* Or Laws 1973, ch 836, § 15, more than 25 years *before* the legislature first enacted ORS 165.800, which established the crime of identity theft, *see* Or Laws 1999, ch 1022, § 1. Our task in interpreting a statute is to discern the intention of the legislature in enacting it. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993); ORS 174.020. It is difficult to imagine that the legislature could have intended the term "theft" as used in ORS 131.315(7) to encompass identity theft, when the concept did not yet exist.

Moreover, and significantly, subsequent to the enactment of the identity-theft statute, the legislature amended a different venue provision of ORS 131.315—specifically, subsection (12)—to expressly include identify theft, but did not likewise amend subsection (7). In 1999,

when the identity-theft statute was enacted, ORS 131.315(12) provided, "If the offense is theft and the offense consists of an aggregate transaction involving more than one county, trial of the offense may be held in any county in which one of the acts of theft was committed." ORS 131.315(12) (1999). However, in 2007, the legislature amended ORS 131.315(12) to add identity theft (and forgery) to the crimes to which subsection (12) applies, so that the subsection now reads, "If the offense is theft, forgery or *identity theft* and the offense consists of an aggregate transaction involving more than one county, trial of the offense may be held in any county in which one of the acts of theft, forgery or *identity theft* was committed." (Emphases added.) *See* Or Laws 2007, ch 584, § 3. That indicates that the legislature understood that the term "theft" as used in ORS 131.315 did not already encompass "identity theft." Moreover, "we ordinarily assume that the legislature uses terms in related statutes consistently." *State v. Cloutier*, 351 Or 68, 99, 261 P3d 1234 (2011); *see also, e.g., Pete's Mountain Homeowners v. Ore. Water Resources*, 236 Or App 507, 518, 238 P3d 395 (2010) ("It is a longstanding principle of statutory construction that words may be assumed to be used consistently throughout a statute." (Citing *Tharp v. PSRB*, 338 Or 413, 422, 110 P3d 103 (2005).)). It would be inconsistent for the legislature to intend the term "theft" to be understood narrowly in subsection (12)—that is, to *not* include identity theft—and at the same time to be understood expansively in subsection (7)— that is, *to encompass* identity theft. In short, we conclude that "theft," as used in ORS 131.315(7), does not include "identity theft." Accordingly, ORS 131.315(7) did not provide a basis for venue in Multnomah County for prosecution of Counts 34, 61, 63, and 64, and the trial court erred in concluding otherwise.[8] We therefore reverse defendant's convictions on those counts.

Reversed on Counts 1, 15, 34, 35, 47, 59, 61, 63, 64, and 71; remanded for resentencing; otherwise affirmed.

---

[8] The state does not contend, nor is it apparent to us, that venue was proper in Multnomah County under a different provision of ORS 131.315.