Submitted June 29, 2015, affirmed December 7, 2016, petition for review denied April 13, 2017 (361 Or 350)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## LARRY ALAN McCRIGHT,
aka Larry Alan Mcright,
*Defendant-Appellant.*

Deschutes County Circuit Court
12FE0623; A155427

386 P3d 141

Peter Gartlan, Chief Defender, and Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Ryan Kahn, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Egan, Judge, and Haselton, Senior Judge.

## HASELTON, S. J.

Defendant appeals a judgment of conviction, entered after a trial to the court, of 20 theft-related offenses. He contends, in part, that (1) the trial court erred in requiring him to wear a restraint on one of his hands during trial; and (2) under *State v. Mills*, 354 Or 350, 312 P3d 515 (2013), his convictions on certain counts must be reversed and remanded so as to afford him an opportunity to dispute venue, including by way of controverting the state's evidence, if he so elects.[1] As explained below, we conclude that the trial court erroneously maintained the hand restraint without requisite justification on this record, but, in the totality of the circumstances, that error was harmless. *See, e.g., State v. Bates*, 203 Or App 245, 250-54, 125 P3d 42 (2005), *rev den*, 340 Or 483 (2006). We also conclude that a *Mills*-based reversal and remand is inapposite in the idiosyncratic procedural posture of this case, in which venue was comprehensively litigated at trial. *See State v. Anderson*, 264 Or App 183, 185, 331 P3d 1052 *adh'd to as modified on recons*, 265 Or App 222, 333 P3d 1250, *rev den*, 356 Or 575 (2014). Accordingly, we affirm.[2]

The facts pertaining to defendant's criminal conduct were, and are—to the extent they bear on our consideration—undisputed. The victim was an 83-year-old widow, and defendant was her daughter's romantic companion. The three of them shared a home. Over a five-month period—between January 2012, when the victim underwent hip surgery and subsequently was frequently in great pain and significantly medicated, and the beginning of June—defendant, after misappropriating the victim's debit card, made unauthorized purchases and withdrawals of substantial sums on dozens of occasions, twice fraudulently induced the victim to write checks to his business for amounts exceeding $50,000 (a total of nearly $133,000), misappropriated a credit card, and stole the victim's jewelry. Consequently, defendant was charged by indictment with nine counts of aggravated first-degree theft (Counts

---

[1] The trial in this case occurred in July 2013, three months before *Mills* issued.

[2] We reject defendant's other contentions without published discussion.

1-5, 7-10), ORS 164.057;[3] seven counts of aggravated identity theft (Counts 11-17), ORS 165.803;[4] three counts of identity theft (Counts 18-20), ORS 165.800;[5] and one count of first-degree theft (Count 6), ORS 164.055.[6]

Defendant waived a jury trial. On the morning of trial, defendant appeared in leg and hand restraints. Defense counsel requested that the hand restraints be removed:

"This is going to be a multi-day trial with a significant amount of financial records and significant number of witnesses. I'll need to be able to communicate with my client effectively, and so I'm asking the Court to order [that] * * *

---

[3] ORS 164.057 provides, in part:

"(1) A person commits the crime of aggravated theft in the first degree, if:

"* * * * *

"(b) The value of the property in a single or aggregate transaction is $10,000 or more."

Counts 1 through 5 corresponded to successive time periods, beginning in January 2012, in which the aggregate unauthorized purchases and ATM withdrawals equaled or exceeded $10,000. Counts 7 and 8 pertained to the theft of the victim's jewelry and theft by deception with respect to the pawn shop to which defendant sold the jewelry. Counts 9 and 10 pertained to the theft by deception with respect to the two checks in excess of $50,000.

[4] ORS 165.803 provides, in part:

"(1) A person commits the crime of aggravated identity theft if:

"(a) The person violates ORS 165.800 in 10 or more separate incidents within a 180-day period[.]"

Each of the aggravated identity theft counts corresponded to successive time periods during which defendant had unlawfully used the victim's debit card 10 or more times.

[5] ORS 165.800 provides, in part:

"(1) A person commits the crime of identity theft if the person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person."

Counts 18 and 19 each pertained to a single unlawful use of the victim's debit card. Count 20 pertained to unlawful use of the credit card.

[6] ORS 164.055 provides, in part:

"(1) A person commits the crime of theft in the first degree if, by means other than extortion, the person commits theft as defined in ORS 164.015 and:

"(a) The total value of the property in a single or aggregate transaction is $1,000 or more[.]"

Count 6 pertained to purchases and ATM withdrawals using the victim's debit card between April 1 and June 2, 2012, a period in which the aggregate value was less than $10,000.

the handcuffs on my client be removed during the course of the trial.

"* * * * *

"He'll still have leg restraints, but—so he can write and we can * * * adequately communicate * * *."

The court deferred ruling, noting that it "leave[s] those decisions up to the sheriff's department," and directed the courtroom deputy to check with the deputy's superior.[7] The deputy sought clarification from defense counsel: "[J]ust so I'm clear, both hand restraints off or just the right hand, so he can write?" Counsel responded: "Both hand restraints. The leg restraints would remain on for the trial."

Shortly thereafter, the deputy returned, and the court stated: "So after consultation with the sheriff's department, the defendant's going to have his writing hand released, and that's what we're going to do." Defense counsel remonstrated:

"My client is currently incarcerated at the work center. It's a lower level of security. He—my understanding, and I'm sure the State would correct me if I'm wrong—has no escape convictions, no crimes of violence going on. He is in his late 50s, and he's currently charged simply with property crimes. * * * [T]he risk endangering the safety of anyone in the courtroom or the courthouse is nonexistent.

"In addition, there's a vast amount of business records, and his ability to quickly page through those will be compromised. My ability to communicate with him again will be compromised."

The court then asked, "How is your ability to communicate with your client compromised?" Defense counsel responded, "His ability to write * * * notes to me, as well as go through the paperwork." The court concluded:

"Well, I'm observing your client right now and [it] looks [like] he's right-handed. He has a pen in his hand. He's moving his hand very freely, and he's resting his left hand on the desk kind of in a normal manner. I don't see any great difficulty at all here.

_____

[7] While that matter was pending, defendant pleaded guilty to Counts 9 and 10, relating to the theft and sale of the victim's jewelry.

"* * * * *

"My position is actually pretty simple. I make—*I allow the sheriff's department, who's responsible for the security of the courtroom and courthouse and responsible for the defendant while he's in custody, I allow them to make those decisions.* And there's no jury present in this case, obviously, so the fact that he's visibly in restraints is of no concern. He's wearing street clothes, in any event.

"*And if there becomes an issue you want to bring up later, \* \* \* he's having some difficulty handling documents, you can bring it up later and maybe I'll address the issue for that purpose.* But the sheriff's department has directed that his—only his writing hand be released, and it's been released."

(Emphases added.)

The state then presented testimony substantiating the facts recounted above. During cross-examination, defense counsel elicited testimony pertaining to the location of some of the myriad aggregated transactions on which the aggravated first-degree theft and aggravated identity theft counts were predicated.

Defendant also testified—at length. On both direct examination and cross-examination, he admitted, without reservation or qualification, having engaged in all of the charged conduct, though he disputed whether the victim was a "vulnerable victim" as charged for sentencing enhancement purposes. Defendant explained that he had engaged in much of the criminal conduct in an effort to sustain his faltering property-development business and claimed that he intended to repay the victim when the business's cash flow improved.[8] During his direct examination, defense counsel elicited extended testimony from defendant relating to whether certain purchases and ATM withdrawals using the victim's debit card had occurred in Deschutes County or elsewhere, including locations in Multnomah and Marion Counties and Colorado, where defendant would travel for

---

[8] Defendant acknowledged that he had been convicted of theft-related felonies once in federal court, and three times (most recently in 2010) in Oregon state courts.

business. The prosecutor, on cross-examination, also elicited testimony pertaining to venue.

At the beginning of his closing argument, defense counsel tendered to the court a submission entitled "Memorandum in Support of Not Guilty Verdicts," with an attachment denominated "McCright Defense Ledger." The memorandum focused on legal issues pertaining to merger of various counts, lack of venue based on the purported location of certain predicate transactions, and alleged failure of proof either as to sufficient aggregation or aggravating sentencing factors for certain counts. The attached "Defense Ledger" purported to list each predicate transaction for each count, including those counts of aggravated first-degree theft and aggravated identity theft based on multiple transactions, identifying, *inter alia*, the date, "[l]ocation," character, and amount of each transaction. The "[l]ocation" column of the "ledger," while representing that some of the predicate transactions occurred outside of Deschutes County, also represented that at least one—and, in most instances, the overwhelming majority—of the predicate transactions for each of the aggravated first-degree theft and aggravated identity theft counts (Counts 1-5 and 11-17, respectively) had occurred in "[B]end." The "ledger" included similar representations as to all other counts, including Count 6 (first-degree theft) and Count 18 (identity theft).[9]

Defense counsel's arguments in closing substantially tracked the memorandum. There was no argument disputing whether defendant had actually engaged in the charged conduct. Rather, the focus was on merger, the legal sufficiency of the proof of aggravating factors, and—as pertinent to our consideration—venue. Specifically, defense counsel asserted:

> "For those transactions that didn't occur in Deschutes County, [including] either Marion County or Multnomah County, * * * the venue is not appropriate here today, and for those that occurred in Colorado, the Court does not have jurisdiction over those or venue is not proper in this case."

---

[9] We highlight those counts because defendant's *Mills*-based assignments of error seek a reversal and remand of defendant's convictions "on Counts 1-6, 11-16, and 18."

The ostensible premise of defendant's position was that, if even one of the multiple predicate transactions underlying each aggregated count had occurred outside of Deschutes County (or, more precisely, if the state failed to prove that *all* of the predicate aggregated transactions had occurred in Deschutes County), that count must be dismissed for failure of legally sufficient proof of venue.

The state anticipated that contention. In closing argument, the prosecutor asserted:

> "The argument may be made that because some of the transactions occurred outside of the state or in other counties of this state, uses of the debit card to withdraw [the victim's] money and steal from her, that venue isn't proven with regard to the particular counts because we don't—we can't say that * * * all of these events occurred in this county, * * * so that the value, the venue value would drop below $10,000. That is not the law, however.

> "The law is that venue is appropriate where either the conduct occurs or where the result occurs, and the result in this case was in Deschutes County. The result was [the victim's bank] account that was established in Bend, in Deschutes County, Oregon, suffered these losses."

In so arguing, the prosecutor invoked ORS 131.305(1) and ORS 131.315.[10] The prosecutor and the court referred, in colloquy, to ORS 131.315(1) and (7). However, neither referred

---

[10] ORS 131.305(1) provides:

"Except as otherwise provided in ORS 131.305 to 131.415, criminal actions shall be commenced and tried in the county in which the conduct that constitutes the offense or a result that is an element of the offense occurred."

ORS 131.315 provides, in part:

"(1) If conduct constituting elements of an offense or results constituting elements of an offense occur in two or more counties, trial of the offense may be held in any of the counties concerned.

"* * * * *

"(7) A person who commits theft, burglary or robbery may be tried in any county in which the person exerts control over the property that is the subject of the crime.

"* * * * *

"(12) If the offense is theft, forgery or identity theft and the offense consists of an aggregate transaction involving more than one county, trial of the offense may be held in any county in which one of the acts of theft, forgery or identity theft was committed."

to ORS 131.315(12), which relates specifically to venue with respect to trial of theft and identity theft charges predicated on multiple transactions occurring in different counties. Under that provision, venue for the trial of such charges lies "in any county in which one of the acts of theft * * * or identity theft was committed." *Id.*; *accord State v. Berndt*, 282 Or App 73, 83, 386 P3d 196 (2016) (holding that, by contrast to ORS 131.315(12), "'theft,' as used in ORS 131.315(7), does not include 'identity theft'").

The trial court found defendant guilty on all counts, and this appeal ensued.

We first address defendant's appellate challenge to the trial court's ruling maintaining a restraint on defendant's left (nonwriting) hand. As set out above, trial counsel did not object to the maintenance of leg restraints, *see* 282 Or App at 695; consequently, defendant's assignment of error relates solely to the hand restraint. Defendant contends that the record was legally insufficient to substantiate security concerns justifying that restraint and that, in all events, the trial court failed to exercise independent discretion in that matter, impermissibly acceding to the judgment of the sheriff's office. *See, e.g.*, *State v. Wall*, 252 Or App 435, 439, 287 P3d 1250 (2012), *rev den*, 353 Or 280 (2013) ("Although a sheriff's deputy * * * may provide helpful and necessary information in order to assist in the assessment of the risk posed by an unrestrained defendant, the trial court may not simply accept the conclusion of others; it must make an independent determination that restraint is justified.").

The state does not defend the merits of the court's ruling. Instead, the state contends that, in the totality of the circumstances, any error was harmless. In that regard, the state emphasizes that the trial court, in response to counsel's initial objections, ordered that the restraint on defendant's right (writing) hand be removed and invited counsel to inform the court if, during the trial, the remaining hand restraint impaired defendant's ability to communicate with counsel—and that counsel never did so.

We agree with defendant that the trial court erred, because the record does not substantiate the requisite justification for the hand restraint. Indeed, in that respect,

the circumstances of this case approximated those in *Wall.* Here, as there, the state failed to "adduce evidence that would permit the court to find that the defendant poses an immediate or serious risk of committing dangerous or disruptive behavior, or that he or she poses a serious risk of escape." 252 Or App at 442-43.

We further conclude, however, that, in the totality of the circumstances, that error was harmless. Our conclusion in that regard derives from our determination that the record here contradicts any material impairment of the interests identified in our precedents addressing the imposition of physical restraints. In *Wall,* we summarized those considerations:

> "[T]here are three foundations for common-law and constitutional safeguards against the unfettered imposition of restraints on criminal accuseds: '(1) impingement on the presumption of innocence and the dignity of judicial proceedings; (2) inhibition of the accused's decision whether to take the stand as a witness; and (3) inhibition of the accused's consultation with his or her attorney.'"

*Id.* at 442 (quoting *State ex rel Juv. Dept. v. Millican,* 138 Or App 142, 147-48, 906 P2d 857 (1995), *rev den,* 323 Or 114 (1996)); *see also State v. Washington,* 355 Or 612, 627-30, 330 P3d 596, *cert den,* ___ US ___, 135 S Ct 685 (2014) (summarizing the same concerns and concluding that the record substantiated trial court's order that the defendant wear a stun belt that was not visible during jury trial); *Bates,* 203 Or App at 250-54 (addressing those concerns in jury trial in which the defendant was required to wear a stun belt not visible to jurors and concluding that any error in imposing that restraint was harmless).[11]

In this case, it is unclear from the record whether the single hand restraint was visible during trial; although the trial court observed that defendant was "visibly in restraints," 282 Or App at 696, that comment could have

---

[11] *Cf. Sproule v. Coursey,* 276 Or App 417, 423, 367 P3d 946, *rev den,* 359 Or 777 (2016) (where the post-conviction court found that leg brace used to restrain the petitioner during his criminal trial had not been visible to the jury, it was incumbent on the petitioner to establish prejudice from criminal trial counsel's allegedly deficient failure to object to that restraint, but petitioner did not do so).

related to the leg restraints, the hand restraint, or both. In all events, the court, which, in this bench trial, was the trier of fact, was obviously aware of the hand restraint—as it was of the leg restraints to which defense counsel lodged no objection. Thus, at least to some extent, the first consideration, pertaining to "impingement on the presumption of innocence and the dignity of judicial proceedings," *Bates*, 203 Or App at 251 (internal quotation marks omitted), is implicated. *Compare Millican*, 138 Or App at 146-48 (addressing that consideration in juvenile delinquency proceeding in which court was trier of fact) *with State v. E. J. Y.*, 113 Wash App 940, 952, 55 P3d 673, 679 (2002) (holding that where juvenile was held in restraints throughout "fact finding hearing" without findings justifying restraint, the error was harmless because "[t]his was a proceeding without a jury, which greatly reduces the likelihood of prejudice[,]" and there was no showing that "the use of restraints substantially affected the trial court's fact finding").

Nevertheless, when, as here, there were no material factual disputes as to whether defendant had committed the culpable acts—as noted above, defendant freely admitted his culpability—the potential for impermissible subconscious skewing of the trial court's essential factual determinations, "imping[ing] on the presumption of innocence," was nonexistent.[12] *Accord People v. Williams*, ___ Ill App 3d ___, ___, 53 NE3d 1019, 1027 (2016) (erroneous shackling in bench trial held not harmless where the defendant was charged with sexual abuse and the trial was, essentially, a "credibility contest"). Consequently, there was no cognizable impairment of the first interest.

With respect to the second fundamental consideration, the record belies any "inhibition of [defendant's] decision whether to take the stand as a witness." *Wall*, 252 Or App at 442 (internal quotation marks omitted). Defendant did, in fact, testify—and did so at length—and "the written record of defendant's testimony is not marked by any obvious

---

[12] As described above, the focus of the defense was not on factual matters dependent on an assessment of defendant's credibility but, instead, on such "matter of law" issues as the propriety of merger of various counts and the legal sufficiency of proof of venue and of certain aggravating factors. *See* 282 Or App at 697-98.

sign of anxiety." *Bates*, 203 Or App at 253. *See id.* at 252-53 (concluding that error was harmless where, *inter alia*, the defendant testified and "never asserted that the [stun] belt affected his testimony[,]" and noting that, because "this case does not reduce to a true swearing match[,] * * * there is little likelihood that the presence of the stun belt had sufficient effect on defendant's ability to testify so as to affect the verdict"); *Millican*, 138 Or App at 148 (noting, in concluding that error in unjustified imposition of leg restraints was harmless, that "[c]hild did, in fact, testify, and presented his version of events without any suggestion of discomfort or reluctance").

Finally with respect to the single hand restraint, the record also contradicts any material impairment of defendant's ability to consult with counsel and participate in his own defense. The trial court, as noted, explicitly found that defendant was able to write "very freely" with his unrestrained right hand, *see* 282 Or App at 695, and, notwithstanding the court's invitation to do so, defense counsel never informed the court during the trial of any "difficulty handling documents" or related issues. *Id.; see Bates*, 203 Or App at 253 ("[T]here is nothing in the record that indicates that the stun belt had any effect on defendant's ability to communicate with his counsel."); *Millican*, 138 Or App at 148 (same).

The trial court's error in maintaining the single hand restraint was harmless.

We turn, finally, to venue. Defendant contends that, because his trial antedated *Mills* and he had moved for judgments of acquittal based on alleged insufficiency of proof of venue as to certain counts (Counts 1-6, 11-16, and 18), he is entitled under *Mills* to a reversal and remand of the convictions on those counts.

The state counters that, consistently with *Anderson*, 264 Or App at 185, a *Mills*-based reversal and remand is inapposite where, as here, the parties have comprehensively litigated venue, with defendant contesting the state's evidence and presenting evidence of his own, at trial. We agree with the state.

*Anderson* guides our consideration. There, the defendant, who, in a pre-*Mills* trial, had been convicted of several drug offenses, assigned error to the trial court's denial of her "venue-based motion for a judgment of acquittal." 264 Or App at 184. Invoking *Mills*, the defendant argued that she was "entitled to a remand for an evidentiary hearing." *Id.* In rejecting that contention, we began with a summary of *Mills*:

> "In *Mills*, the Supreme Court held that venue is not a material element of an offense that the state must prove beyond a reasonable doubt and that, when the issue of venue is not raised before trial, it is deemed waived. Although the *Mills* defendant had not challenged venue before trial, the court reversed the defendant's convictions and remanded to the trial court so that the defendant would have an opportunity to challenge venue. It did so because it concluded that 'it would be unfair to [the] defendant to hold that he [had] *forfeited the opportunity to challenge venue*, in light of the fact that the law in effect at the time of trial permitted him to wait until the state rested to raise the issue.'"

*Id.* at 184-85 (quoting *Mills*, 354 Or at 373; emphasis added in *Anderson*; citations omitted). We then concluded that the remedial/dispositional concerns that informed the reversal and remand in *Mills* did not apply to the defendant in *Anderson*:

> "Like the defendant in *Mills*, defendant waited until trial to challenge venue. However, unlike the defendant in *Mills*, who simply moved for a judgment of acquittal based on the state's failure to introduce evidence on venue, defendant affirmatively contested venue at trial. *Accordingly, the unfairness that necessitated the remand in Mills—viz., to avoid a forfeiture of the defendant's opportunity to challenge venue—is not present in this case.* Here, the state presented evidence on venue at trial, and defendant contested that evidence and put on venue evidence of her own. Accordingly, we do not believe that remand on the issue of venue is appropriate in this case."

*Id.* at 185 (emphasis added).[13]

---

[13] *Anderson* appears to be the only reported case in which an appellant requested a *Mills*-based reversal and remand after having affirmatively contested venue, including by way of presentation of evidence, at trial. *Compare Anderson with, e.g., State v. Schindler*, 281 Or App 86, 94-95, 381 P3d 973 (2016), *State*

The same is true here—with an additional, exacerbating twist: Defendant not only fully litigated venue by way of cross-examination of the state's witnesses, his own testimony, and closing argument, but he also made admissions during his testimony substantiating venue under ORS 131.015(12) as to some of the counts for which he now seeks reversal and remand, and—through representations in the "defense ledger" submitted for the court's consideration—acknowledged facts legally sufficient to establish venue under ORS 131.015(12) as to all such counts. *See* 282 Or App at 697-98. In sum, in this case, as in *Anderson*, "the unfairness that necessitated the remand in *Mills—viz.*, to avoid a forfeiture of the defendant's opportunity to challenge venue," 264 Or App at 185, including through presentation of evidence, is not implicated.

Affirmed.

---

*v. Mulvaine*, 274 Or App 213, 215-16, 360 P3d 634 (2015), *and State v. Weilert*, 261 Or App 529, 532-33, 323 P3d 513 (2014) (all arising in posture in which the appellant had simply unsuccessfully moved for a judgment of acquittal based on asserted insufficiency of proof of venue).