**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

AUG 16 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DAVID MICHAEL DECKER, | No. 17-35152 |
| Petitioner-Appellant, | D.C. No. 6:13-cv-01415-SI |
| v. | |
| ROB PERSSON, | MEMORANDUM* |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted March 20, 2018
San Francisco, California

Before: BEA, MURGUIA, and OWENS, Circuit Judges.

Petitioner David Decker ("Decker") appeals from the district court's denial

of habeas relief on his conviction and sentence for felony murder, which was based

on the predicate felony of burglary. We have jurisdiction under 18 U.S.C. § 1291

and § 2253. We review the district court's denial of a petition for habeas relief *de*

*novo*, *Blair v. Martel*, 645 F.3d 1151, 1154 n.1 (9th Cir. 2011), and we affirm.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

In 2006, Decker was convicted by a jury in Oregon state court of felony murder of Kirk Jones ("Jones"). The felony murder charge was based on allegations that Jones died while Petitioner and an accomplice, Justin Starrett ("Starrett"), were committing a burglary and as a result of their conduct in committing that crime. The district court initially granted habeas relief on three of Decker's habeas claims, but this court reversed as to two of those claims and remanded the third. *Decker v. Persson*, 663 F. App'x 520, 521, 523 (9th Cir. 2016) ("*Decker I*"),[1] *cert. denied*, 137 S. Ct. 1232 (2017).

Decker's remaining habeas claim—the sole claim at issue on this appeal—is that his trial counsel rendered ineffective assistance of counsel ("IAC") when he failed to request an instruction on the intent element of the burglary charge that would have clarified to the jury that the burglary charge required the state to prove that Decker formed the intent to assault Jones at the time that Decker "unlawfully remained" in Jones's apartment; that is, when Jones told Decker and Starrett to leave (thus withdrawing their licenses to be in his home) and they did not leave. Because Decker failed to raise this claim in his state post-conviction proceeding, he must establish that his post-conviction-relief counsel ("PCR counsel") was constitutionally defective in failing to raise it in that proceeding. *Martinez v. Ryan*,

___

[1] The material facts of this case are recounted in this court's previous decision in this case. *See Decker I*, 663 F. App'x at 522–23.

566 U.S. 1, 17 (2012). Then, if that procedural default is excused, Decker must prove both that (1) trial counsel rendered ineffective assistance and (2) Decker was prejudiced thereby because there is a reasonable probability that Decker would have been found not guilty of felony murder had counsel requested a different instruction on intent. *See Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).

Under Oregon law, a person is guilty of felony murder if, in the course of committing a burglary in the first degree (a felony), a participant in the felony causes the death of another person. Or. Rev. Stat. § 163.115(1)(b)(C). A person is guilty of burglary in the first degree if he "violates ORS 164.215 and the building is a dwelling." Or. Rev. Stat. § 164.225(1). Section 164.215 provides that a person is guilty of burglary under that section if he "enters or remains unlawfully in a building with intent to commit a crime therein." Or. Rev. Stat. § 164.215(1). Remaining unlawfully means "failing to leave after authorization to be present expires or is revoked." *In re JNS*, 308 P.3d 1112, 1117 (Or. Ct. App. 2013). In determining whether the intent element of section 164.215 is satisfied, the "proper focus is on the defendant's intent at the initiation of the trespass." *Id.* at 1118.

At trial, the Oregon court gave the following instruction regarding the elements of the predicate felony of burglary:

> Oregon law provides that a person commits the crime of Burglary in the First Degree if the person enters or remains unlawfully in a dwelling

3

17-35152

with the intent to commit a crime therein. In this case, to establish the crime of Burglary in the First Degree, the state must prove beyond a reasonable doubt . . . [that] *at the time of entering or remaining unlawfully*, David Decker had the intent to commit the crime of assault [in Jones's apartment].

As the district court found below, the jury instruction given at trial correctly explained the law as to when Decker must have formed the intention to commit assault to be guilty of first-degree burglary. The instruction given "provided accurate, if somewhat general, guidance to the jury on what it was required to find," and was therefore adequate under Oregon law. *State v. Pedersen*, 255 P.3d 556, 564 (Or. Ct. App. 2011) ("It is not error for a trial court to refuse to give a requested instruction if the instruction given by the court, although not in the form requested, adequately covers the subject of the requested instruction.").

Decker argues that trial counsel nonetheless rendered IAC by failing to request an instruction more specifically tailored to a defense that Decker did not form the requisite intent "at the time of entering or remaining unlawfully."[2] But this argument cannot overcome the deference applied to the performance of both

---

[2] Decker's Opening Brief also argues that trial counsel was ineffective because he failed to object to the prosecution's characterizations of the intent element of the burglary charge, but no separate claim based on failures to object is before us here. *Decker I*, 663 F. App'x at 522 ("Claim 1(C) involves defense counsel's failure to request a jury instruction explaining the intent required for a criminal defendant to be convicted of burglary under Oregon law."); *id.* at 523 (remanding for the district court "to determine in the first instance whether the burglary instructions given by the Oregon trial court to the jury were sufficient or insufficient concerning the intent element of burglary under Oregon law").

PCR and trial counsel. This court held in *Decker I* that Decker's trial counsel's "decision to argue an affirmative defense[3] rather than Decker's lack of intent [to assault Jones at the time he was told to leave] did not constitute ineffective assistance of counsel." *Decker I*, 663 Fed. Appx. at 523. That was a proper application of *Strickland*'s mandate for reviewing courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Indeed, all of the cases Decker cites to show the viability of the foregone defense strategy were decided *after* both his trial and his initial state post-conviction proceeding. *State v. Werner*, 383 P.3d 875 (Or. Ct. App. 2016); *State v. Gordon*, 383 P.3d 942 (Or. Ct. App. 2016); *State v. Berndt*, 386 P.3d 196 (Or. Ct. App. 2016); *In re JNS*, 308 P.3d 1112 (Or. Ct. App. 2013). Therefore, trial counsel's failure to seek a more detailed instruction on the timing of Decker's intent to assault Jones—because trial counsel reasonably pursued a different defense—was "within the wide range of reasonable

---

[3] Trial counsel argued a statutory affirmative defense based on Or. Rev. Stat. § 163.115(3), which provides:

It is an affirmative defense to a charge of [felony murder] that the defendant: (a) Was not the only participant in the underlying crime; (b) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid in the commission thereof; (c) Was not armed with a dangerous or deadly weapon; (d) Had no reasonable ground to believe that any other participant was armed with a dangerous or deadly weapon; and (e) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death.

professional assistance." *Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective *at the time*." (emphasis added)).

Moreover, even if we were inclined to depart from the law of the case to hold that trial counsel's failure to raise another defense was unreasonable (and thus that failure to request a jury instruction in service of that other defense was unreasonable as well), we would not be able to say here that *PCR* counsel's failure to raise an IAC claim on that basis was itself unreasonable. *See Decker I*, 663 Fed. Appx. at 523 (holding that trial counsel in this case did not render ineffective assistance in arguing the statutory defense rather than a defense based on the intent element of the burglary charge); *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) ("[Post-conviction] [c]ounsel is not necessarily ineffective for failing to raise even a nonfrivolous claim."). Decker failed to address his procedural default in his Opening Brief and then failed to file a Reply Brief after Respondent raised it in his Answering Brief. Decker has therefore failed to carry his burden to establish grounds for habeas relief.

**AFFIRMED.**

*Decker v. Persson*, No. 17-35152

MURGUIA, Circuit Judge, dissenting:

By failing to request a clarifying instruction on the intent element of burglary, David Decker's trial counsel, D. Olcott Thompson, committed an error that rendered his performance at trial constitutionally deficient. This error was fatal to Decker's defense: it permitted the jury to reach a guilty verdict that was unsupported by any evidence at trial, and it resulted in the imposition of a mandatory sentence of life in prison. Because Decker has proven his ineffective assistance of counsel claim, I respectfully dissent.

The question presented by this appeal is whether Thompson deprived Decker of the effective assistance of counsel by failing to request an additional jury instruction on the intent element of burglary, which was the predicate offense for Decker's felony murder charge. In order to prove the ineffective assistance of trial counsel under the Sixth Amendment, Decker must show that (1) Thompson's performance at trial was deficient, which requires showing that Thompson "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) Decker was prejudiced by the deficient performance, meaning he was deprived of "a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Both prongs of the

1

test are met here.

First, by permitting the jury to reach a verdict based on a misunderstanding of Oregon law, Thompson's performance was deficient. Under Oregon law, "a person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime therein." Or. Rev. Stat. § 164.215(1). Critical here, the intent to commit a crime must be formed contemporaneously with the decision to enter or remain unlawfully in the building. *In re J.N.S.*, 308 P.3d 1112, 1117–18 (Or. Ct. App. 2013). In fact, intent to commit a subsequent crime must be the *purpose* for the defendant's decision to remain. *See id.*

Where, as here, "the trespass begins when a defendant *remains in a building* after authorization has expired or has been revoked, then we ask whether the defendant possessed the requisite criminal intent at the time of the unlawful *remaining*." *Id.* at 1118 (emphasis in original). As the majority correctly notes, Decker's trespass began when Kirk Jones revoked his permission for Decker to be in the apartment by asking Decker to leave. Following an exchange between Jones and Justin Starrett, Jones stated: "Well, if you're going to act like that, you should leave my apartment." Because this was the moment that Jones revoked his license for Decker to remain in the apartment, it was at this moment, and not after, that

2

Decker must have formed the intent to commit assault on Jones for the purposes of proving burglary. *See id.*

As Magistrate Judge Janice Stewart correctly found in her original Findings and Recommendation, there was no evidence presented at trial that Decker intended to commit assault when his trespass began. This case was unusual, in that Decker had been invited into Jones's apartment as a guest. When Jones asked Starrett and Decker to leave, Decker had been in the apartment with Jones and Starrett for over five hours, drinking and playing games. During all of that time there was no indication of violence. Jones asked Decker and Starrett to leave because Jones was in a disagreement with Starrett, not with Decker. Decker's assault for the purposes of proving burglary was the single act of throwing a bottle of vodka at Jones. It was not planned, and it did not occur until after Starrett had initiated the violence by hitting Jones over the head with a lamp. Even assuming Decker had an inkling of the events to come at the time his trespass began, this is insufficient under Oregon law, which requires that the defendant act with "a conscious objective to cause the result or to engage in the conduct so described." *State v. Cook*, 335 P.3d 846, 849 (Or. Ct. App. 2014) (quoting Or. Rev. Stat. § 161.085(7)). On these facts, had Thompson made intent the centerpiece of his defense, the prosecution's case would have failed.

Perhaps realizing that there was no evidence to support a burglary charge, the prosecution advanced a theory that Decker's trespass began at a different time—the time of the assault itself. Specifically, the prosecution repeatedly told the jury that Jones "impliedly" revoked his permission for Decker to remain in the apartment when Decker committed the assault on Jones. This theory—that Jones *impliedly* revoked permission for Decker to remain when the assault began— benefitted the prosecution by eliminating the burden of proof on the intent element of burglary. Specifically, the contemporaneity requirement would always be satisfied: Decker's intent to commit the assault on Jones would *necessarily* be contemporaneous with the unlawful remaining because both occurred at the time of the assault itself. In other words, the prosecution's burden of proving the elements of intent and unlawful remaining was met by the very fact of the felony itself.

This theory of burglary has been repeatedly and strongly rejected by Oregon courts. *See State v. Berndt*, 386 P.3d 196, 200 (Or. Ct. App. 2016) (reversing burglary conviction where "the only conduct on which the state relied at trial to assert that defendant had acted outside the scope of his license, and therefore unlawfully remained on the premises, was his commission of a crime."); *State v. Werner*, 383 P.3d 875, 881 (Or. Ct. App. 2016) ("Because it is inconsistent with the legislature's definition of burglary and because it would greatly expand the

4

crime of burglary despite the absence of any indication that the legislature intended such an expansion, we reject the state's argument that commission of a crime in a building, in and of itself, converts a lawful entry into an unlawful remaining."); *In re J.N.S.*, 308 P.3d at 1118–19 (rejecting the state's theory "that a person may commit second-degree burglary by entering a premises and then forming the intent to commit a crime therein.").[1] The idea that intent can be proved by the very fact of the subsequent felony misconstrues the purpose of the burglary statute, which is to penalize the act of entering a building with the intent to commit a felony. *State v. Chatelain*, 220 P.3d 41, 45 (Or. 2009) (en banc). In fact, the contemporaneity of the unlawful remaining and the intent to commit a felony is critical because it is what distinguishes the crime of burglary both from a criminal trespass and from the subsequently committed felony. *See Berndt*, 386 P.3d at 199 ("[T]he legislature intended burglary to be separate from (and not dependent upon) the subsequent

---

[1] The majority dismisses these cases as irrelevant because they were decided after Decker's trial. But these cases did not change the law on burglary in Oregon. Rather, they simply stated what should be obvious: if intent could be proved by the very fact of the subsequent felony, then every single felony committed inside a dwelling would automatically give rise to a burglary charge. As noted herein, this is not the case. *See Chatelain*, 220 P.3d at 45 (discussing 4 William Blackstone, Commentaries on the Laws of England 227 (1769) ("[I]t is clear, that [the] breaking and entry must be with a felonious intent, otherwise it is only a trespass.")).

commission of the intended crime . . . ." (quoting *Werner*, 383 P.3d at 880–81));

*Chatelain*, 220 P.3d at 45 ("Since the time of Blackstone, the defendant's intent to

commit a crime in the building has been the characteristic distinguishing burglary

from mere trespass."). Erasing this distinction is an error of consequence: it

eliminates the state's burden of proof on the intent element of burglary, which is

"the essence of the offense." *In re J.N.S.*, 308 P.3d at 1119 (citation omitted).

Indeed, under the prosecution's theory, any felony committed inside a dwelling

would constitute burglary, which of course makes no sense. Yet, that is what

occurred here.

Decker's trial counsel did not argue intent and never objected to the

prosecution's theory of the case.[2] Nor did he request an instruction clarifying that

intent must have been formed at the time Jones asked Decker to leave, and not

sometime thereafter. *See id.* at 1117–18. Armed with a different instruction, the

jury might have been forced to arrive at the same conclusion reached by Magistrate

---

[2] In his federal habeas petition, Decker also raised a claim that Thompson was ineffective for failing to argue to the jury that Decker lacked the intent required for a criminal defendant to be convicted of burglary under Oregon law. *See Decker v. Persson*, 663 F. App'x 520, 521 (9th Cir. 2016) ("*Decker I*"). The prior Ninth Circuit panel in this case reversed the district court's order granting that claim on the merits. *Id.* at 523. I was not a member of the prior panel, and I do not agree with its disposition.

Judge Stewart—namely, that at the time Jones asked Decker to leave there was no evidence presented at trial that Decker had formed the intent to commit assault on Jones. Instead, by failing to correct the prosecution's misstatement of law, Thompson permitted the jury to reach a verdict on the assumption that Decker's unlawful remaining began at the very moment he assaulted Jones, which required no evidence of intent at all.

The trial court's instruction on the intent element of burglary would be sufficient if there was only one moment in time when Decker might have formed the intent to commit assault. But the jury was incorrectly allowed to believe that there were two times in which Decker might have formed the intent to commit the assault on Jones—either at the time Jones asked Decker to leave, or at the time of the assault itself. This legal error was not corrected in the jury instructions, even though this Oregon burglary offense required intent to have been formed at the time Jones verbally rescinded his permission for Decker to remain and not later. This error was also compounded by the prosecution's repeated misstatements of what the law required during closing statements.

In the absence of this critical information, the jury, not surprisingly, found the elements of burglary had been met and entered a guilty verdict for the felony murder charge. The trial judge subsequently imposed the mandatory life sentence.

Considering all these circumstances, I conclude that Thompson's failure to rectify the prosecution's misstatements of law constituted an "error [] so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that Decker was prejudiced by this error. *Strickland*, 466 U.S. at 687. Therefore, Decker has proven his ineffective assistance of counsel claim with regard to trial counsel.[3]

---

[3] Decker would not be able to show prejudice if, even in spite of Thompson's deficient performance, the timing of events could give rise to a reasonable inference that Decker's intent was formed at the time Jones asked him to leave the apartment. *See Cook*, 335 P.3d at 848 ("The state may rely on circumstantial evidence and reasonable inferences flowing from that evidence to establish any element of a charged crime, including intent." (internal quotation marks and citation omitted)). Here, several facts undermine the conclusion that Decker remained unlawfully for the purpose of assaulting Jones at the time Jones asked Decker and Starrett to leave. First, as discussed above, Decker had been in the apartment for at least 5 hours before Starrett assaulted Jones. For those five hours and even up to the time consent was revoked, there was no suggestion of violence on the part of Decker or animosity between Decker and Jones. Earlier in the evening Decker called Jones a "faggot," "fag," and a "punk." However, this was sometime before Michelle Wolf left the apartment, and her testimony was that Decker and Starrett were joking around. When Jones did ultimately ask Decker and Starrett to leave, there was an ongoing dispute between Starrett and Jones, who were lovers—not between Jones and Decker, who had no prior relationship of consequence. The reasonable inference is that the impetus for Starrett's assault was Jones's sexual advances, which were directed at Starrett, not Decker.

Second, when Jones revoked his consent for Decker and Starrett to stay in his apartment, Decker simply remained sitting on the couch as he had been doing for some time. In fact, Decker simply sat and watched as Starrett unscrewed the lamp, while Jones had his back turned, and then hit Jones over the head. This does not suggest Decker had "a conscious objective to cause the result or to engage in

8

In reaching its conclusion that Thompson's performance was not deficient, the majority does not address all of these facts, but rather cites to the deference that we owe to the performance of trial counsel. To this point, I respectfully disagree with the conclusion reached by the prior panel that Thompson's decision to argue an affirmative defense rather than Decker's lack of intent was a legitimate trial strategy. *Decker I*, 663 F. App'x at 523 ("We find that defense counsel's decision to argue an affirmative defense rather than Decker's lack of intent did not constitute ineffective assistance of counsel."). This conclusion was unsupported by the record. *See United States v. Alexande*r, 106 F.3d 874, 876 (9th Cir. 1997) (a court may depart from the law of the case where the first decision was clearly erroneous). Thompson's statutory affirmative defense, which requires proof of each of five elements, several of which were lacking here, was flimsy at best. *See*

---

the conduct so described." *Id.* at 849 (quoting Or. Rev. Stat. § 161.085(7)). It was not until after Starrett used the lamp to assault Jones that Decker demonstrated any intent to assault Jones. In fact, Decker's trial counsel elicited testimony from several witnesses that Decker did not know that Starrett was going to assault Jones or plan the assault in any way.

On these facts, the proximity in time does not give rise to a reasonable inference of intent at the time permission to remain was revoked. *Id.* at 848 ("There is a difference between inferences that may be drawn from circumstantial evidence and mere speculation. Reasonable inferences are permissible; speculation and guesswork are not." (internal quotation marks and citations omitted)). Rather, the evidence suggests that Decker formed the intent to commit assault after Starrett assaulted Jones.

9

Or. Rev. Stat. § 163.115(3).

More importantly, however, even assuming that the statutory affirmative defense was valid, Thompson is not immunized from constitutional challenge because he had *any* strategy—his decision to abandon an alternative defense that had a high probability of success must have been strategic as well. *See United States v. Alferahin*, 433 F.3d 1148, 1161 (9th Cir. 2006) (Alferahin's counsel did not intend strategically to forego the materiality instruction, but rather "had no idea that such an instruction was available to his client as a matter of right."); *United States v. Span*, 75 F.3d 1383 1387–88 (9th Cir. 1996) (defense counsel's performance was deficient in failing to object to an erroneous instruction on an excessive force defense, even where counsel had three other valid defenses that were asserted at trial). Thompson indicated no such strategy with regard to an intent defense. Rather, Thompson's affidavit suggests that Thompson failed to even identify the prosecution's error, much less comprehend its gravity. *Cf. Butcher v. Marquez*, 758 F.2d 373, 377 (9th Cir. 1985) ("Apparently defense counsel, *with adequate knowledge of the law and the evidence*, abandoned pursuit of an instruction on voluntary manslaughter in accord with the strategy that he believed would procure the most advantageous defense for Butcher. It can be inferred that in taking this course of action counsel believed that such a request

would have been fruitless or even harmful to his client." (emphasis added)). For these reasons, again, I must respectfully depart from the majority's conclusion that Thompson's performance was constitutionally sound.

Finally, in order to win on the merits of his ineffective assistance of counsel claim, Decker must show that his post-conviction relief counsel was ineffective in failing to raise the claim that trial counsel was ineffective. I agree with the district court's original conclusion in this case that under *Martinez v. Ryan*, 566 U.S. 1 (2012), Decker has shown that his claim is substantial, and that he has demonstrated cause and prejudice to overcome procedural default on this claim. *See Atwood v. Ryan*, 870 F.3d 1033, 1059–60 (9th Cir. 2017).

There is no dispute that Decker failed to raise his IAC claim ("Claim 1(C)") before the state courts, which would now find Decker's claim procedurally barred. *See Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). Procedural default may be excused, however, if Decker can show cause and prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 746–47 (1991). In *Martinez*, the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9.

"[T]o establish 'cause' to overcome procedural default under *Martinez*, a

11

petitioner must show: (1) the underlying ineffective assistance of trial counsel claim is 'substantial'; (2) the petitioner was not represented or had ineffective counsel during the [state post-conviction relief ("PCR")] proceeding; (3) the state PCR proceeding was the initial review proceeding; and (4) state law required (or forced as a practical matter) the petitioner to bring the claim in the initial review collateral proceeding." *Dickens v. Ryan*, 740 F.3d 1302, 1319 (9th Cir. 2014) (en banc) (citing *Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013)). Here, the third and fourth elements are met. *See* Or. Rev. Stat. § 138.550(3) ("All grounds for relief claimed by petitioner in a petition [for post-conviction relief] must be asserted in the original or amended petition, and any grounds not so asserted are deemed waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition."). Therefore, in order to overcome the default, Decker must show that his PCR counsel was ineffective under the standards of *Strickland*, and that his underlying claim of ineffective assistance of trial counsel is "substantial." *Martinez*, 566 U.S. at 14.

Regarding the first requirement, a claim is "substantial" if it has "some merit." *Id.* For the reasons discussed above, Decker's ineffective assistance of counsel claim is meritorious, and the first requirement to show cause under

12

*Martinez* is satisfied. *See id.*

Regarding the second requirement, neither the magistrate judge nor the district court made any factual findings on the question of whether Decker's post-conviction relief counsel at the initial collateral review proceeding was deficient in failing to raise the present IAC claim. Ordinarily a remand would be appropriate to determine this "highly fact- and record-intensive analysis." *Woods v. Sinclair*, 764 F.3d 1109, 1138 (9th Cir. 2014) (quoting *Detrich v. Ryan*, 740 F.3d 1237, 1262 (9th Cir. 2013) (Watford, J., concurring)). However, I note that Respondent Persson did not object to the Magistrate Judge's failure to explicitly address the performance of PCR counsel, as he was required to do. Rather, Persson's objection focused wholly on the Magistrate Judge's construction of Oregon law. Therefore, any challenge on this ground was waived long ago, and at this stage in these proceedings remand is neither appropriate nor necessary on the procedural default issue. *See Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991) (finding the application of waiver doctrine was necessary to prevent inequity).

In sum, I cannot agree with the majority's conclusion that the given instruction was "general[] guidance" that adequately covered the subject of the requested instruction. On the particular facts of this case, it was, rather, an incomplete instruction. *See State v. Bistrika*, 322 P.3d 583, 595 (Or. Ct. App. 2014)

13

("Instructional error exists where the instructions give the jury 'an incomplete and thus inaccurate legal rule' to apply to the facts . . . ." (quoting *Wallach v. Allstate Ins. Co.*, 180 P.3d 19 (Or. 2008) (en banc)). The court's given instruction failed to convey to the jury a critical piece of information, which, if included, more likely than not would have led the jury to reach a verdict of "not guilty." *See Wallach*, 180 P.3d at 26 (court's instruction constituted reversible error where instruction was "too broad," in that "[i]t permitted the jury to find the defendant . . . guilty for conduct that did not constitute the charged crime, as well as for conduct that did" (discussing *State v. Pine*, 82 P.3d 130 (2003)); *cf. State v. Pedersen*, 255 P.3d 556, 564 (Or. Ct. App. 2011) ("We cannot say the trial court's instruction created an erroneous impression of the law or that defendant was entitled to his requested instruction."). Moreover, no other instruction given by the judge clarified this grievous deficiency. *See State v. Woodman*, 138 P.3d 1, 8 (Or. 2006) (en banc) ("[W]e read the instructions as a whole to determine whether they state the law accurately." (citations omitted)). On the facts of this case, the instruction was erroneous and Thompson's failure to identify or rectify the error violated Decker's rights under the Sixth Amendment.

Because Decker has succeeded on his ineffective assistance of counsel claim, I would remand with instructions to the district court to grant Decker's

14

petition for writ of habeas corpus. Accordingly, I dissent.