Argued and submitted May 18, decision of Court of Appeals affirmed; judgment
of circuit court affirmed in part and reversed in part, and case remanded to
circuit court for further proceedings October 22, 2009

STATE OF OREGON,
*Petitioner on Review,*

*v.*

AMRIT NATHAN CHATELAIN,
*Respondent on Review.*

(CC 050633303; CA A130208; SC S056484)

220 P3d 41

Ryan Kahn, Assistant Attorney General, argued the cause and filed the brief for petitioner on review. With him on the brief were John R. Kroger, Attorney General, and Rolf C. Moan, Acting Solicitor General.

Elizabeth Corbridge Ranweiler, Deputy Public Defender, Salem, argued the cause and filed the brief for respondent on review. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services, Salem.

BALMER, J.

## BALMER, J.

We allowed review in this criminal case to determine the scope of the statutory corroboration requirement presently found in ORS 136.425(1), which we set out below. Defendant was charged with, among other things, second-degree burglary arising out of an incident where he entered a vacant house that was for sale. An eyewitness testified that defendant had entered the house with a young-looking female companion, remained inside for approximately 45 minutes, and fled when police arrived. When apprehended, defendant appeared to be under the influence of a stimulant, and police found two lighters in his pockets. Eventually, defendant confessed to entering the house for the purpose of smoking marijuana with his younger companion. At trial, defendant moved for a judgment of acquittal, arguing that the state had failed to provide evidence, apart from his confession, that he had entered the house with intent to distribute a controlled substance to a minor, as alleged in the indictment. The trial court denied the motion and ultimately convicted defendant. Defendant appealed, and the Court of Appeals reversed. *State v. Chatelain*, 220 Or App 487, 188 P3d 325 (2008). We allowed review and now affirm the decision of the Court of Appeals.

Because the issue arises on a motion for judgment of acquittal, we state the facts in the light most favorable to the state. *State v. Fries*, 344 Or 541, 543, 185 P3d 453 (2008). At a little after 7:00 a.m., an eyewitness saw defendant and a young woman enter a vacant house that was for sale. Because the witness suspected that the two individuals were not interested in buying the house and were not otherwise authorized to enter it, the witness called police and continued to watch the house for at least 45 minutes. No one left during that time. When the police arrived, shortly after 8:00 a.m., defendant fled out the front door of the house and ran away. Two officers pursued defendant, while another remained at the house and took defendant's companion into custody. According to one of the officers, the companion "had a really young look about her face," but was "[a]t least a teenager."

After a lengthy chase and physical struggle, police, with the assistance of a canine unit, apprehended defendant.

One of the arresting officers testified that defendant "show[ed] all the classic signs of [being under the influence of] some sort of stimulant": he "was real fidgety," seemed "really, really, extremely anxious," and "couldn't stop messing with his clothes." When asked whether defendant appeared to be under the influence of marijuana, the officer noted that he complained of cotton mouth and had bloodshot eyes, but opined that defendant had not used marijuana. The officers did not find drugs on defendant's person, in the backpack that he had been carrying, or in the house from which defendant had fled, but, as noted, they did find two lighters in defendant's pockets.

Some time later, one of the officers interviewed defendant at the police station. When asked why he had gone into the house, defendant stated that "he hadn't been to sleep in quite a few days" and that he had wanted to smoke some marijuana to "calm down." Defendant admitted that he had not had permission to go into the house but stated that "[n]o one was around to say no." He also admitted that he had invited his female companion into the house and that, once inside, he had given her a marijuana "roach" to smoke. When asked how old his companion was, he replied "I don't know, young"; the officer asked him to guess, and defendant stated, "Maybe 18, maybe not."

Based on that incident, defendant was charged with, among other things, second-degree burglary. The state's theory, as pleaded in the indictment, was that defendant had unlawfully entered the vacant house with intent to distribute a controlled substance to a minor therein. *See* ORS 164.215(1) (a person commits second-degree burglary if the person "enters or remains in a building with intent to commit a crime therein"); ORS 475.906 ("[I]t is unlawful for any person to deliver a controlled substance to a person under 18 years of age."). Defendant waived jury trial, and the case was tried to the court.

At the close of the state's case, defendant moved for a judgment of acquittal, arguing that the state had failed to adequately corroborate defendant's confession under ORS 136.425(1). That statute provides:

"A confession or admission of a defendant, whether in the course of judicial proceedings or otherwise, cannot be given in evidence against the defendant when it was made under the influence of fear produced by threats; *nor is a confession only sufficient to warrant the conviction of the defendant without some other proof that the crime has been committed.*"

(Emphasis added.) In other words, a defendant's confession is not legally sufficient to support a conviction unless the state has corroborated that confession with some other evidence of the crime.

Defendant argued that the requirement of ORS 136.425(1) had not been met because the state had failed to provide any evidence, aside from defendant's confession, tending to show that defendant had intended to distribute a controlled substance to a minor when he entered the house. The trial court denied defendant's motion, concluding that the state was not required to corroborate defendant's intent and that it had satisfied its burden under ORS 136.425(1) by submitting evidence to corroborate defendant's unlawful entry into the vacant house.

As noted, the Court of Appeals reversed. The court explained that ORS 136.425(1) requires the state to provide some proof, independent of the confession, that "the" crime to which the defendant confessed, rather than some other crime, has been committed. Because unlawful entry alone would constitute the offense of criminal trespass—not burglary—the court determined that corroboration of that element alone was insufficient to sustain a burglary conviction. Instead, the state was required to corroborate defendant's intent to commit a crime (in addition to criminal trespass) while inside the building, because "intent is, in fact, the essence of [burglary]." *Chatelain,* 220 Or App at 492. The court next concluded that the state had failed to provide "some" evidence, apart from his confession, that defendant had intended to commit the crime of distribution of a controlled substance to a minor when he entered the vacant house. As a result, the court reversed and remanded for entry of conviction for second-degree criminal trespass, the lesser-included offense that the state had corroborated. *Id.* at 496.

The state petitioned for review, and we allowed review to determine whether, to sustain a conviction for burglary, the state was required to produce independent evidence of defendant's intent to commit a particular crime in the building that he unlawfully entered.

In determining whether the state met its burden under ORS 136.425(1), we initially must determine what exactly the statute requires the state to corroborate. The statute appears relatively straightforward on its face—ORS 136.425(1) requires some evidence, in addition to the confession, that "the crime" has been committed. One might interpret that as requiring corroboration of every element of the offense as pleaded in the indictment. However, this court already has rejected that interpretation. Instead, ORS 136.425(1) codified the common-law *"corpus delicti* rule." Thus, the second part of ORS 136.425(1) "can be paraphrased: '[a defendant may not be convicted] without some evidence independent of the confession which tends to establish or to prove the corpus delicti.' " *State v. Lerch*, 296 Or 377, 394, 677 P2d 678 (1984). *See also State v. Manzella*, 306 Or 303, 305 n 1, 759 P2d 1078 (1988) ("Although ORS 136.425(1) does not use the term, *'corpus delicti,'* it codifies a version of the common law *corpus delicti* rule."). We therefore begin with an explanation of the common-law *corpus delicti* rule.

The *corpus delicti* rule emerged in England in the 1800s, apparently in response to celebrated cases in which alleged murder victims turned up alive after their alleged murderers already had been convicted and hanged for the offenses. *State v. Howard*, 102 Or 431, 439, 203 P 311 (1921). One of the more famous of those cases was *Perrys' Case*, where a man disappeared and John Perry—a servant—was accused of murdering him. *Perrys' Case*, 14 How St Tr 1312 (1661). Perry eventually confessed to the murder, implicating his own mother and brother as well. The three Perrys were executed based on John Perry's confession, but, a few years later, the alleged victim "reappeared, hale and hearty, with a weird tale of having been robbed, kidnaped and transported to Turkey where he was held as a slave until he managed to escape." Rollin M. Perkins, *The Corpus Delicti of Murder*, 48

Va L Rev 173, 174 (1962).[1] As a result of cases like *Perrys' Case*, courts in England—and, later, courts in the United States—developed the corroboration requirement known as the "*corpus delicti* rule," which "demands that there be some evidence other than the confession that tends to establish the *corpus delicti*" of the crime charged.[2] Kenneth S. Broun, 1 *McCormick on Evidence* § 147, 600 (6th ed 2006).

 The *corpus delicti* of a given crime does not ordinarily include every element of the crime that the state is required to prove for conviction:

> "Literally, the phrase means the 'body of the crime.' To establish guilt, it is generally necessary for the prosecution to show that (a) the injury or harm specified in the crime occurred, (b) [that] injury or harm was caused by someone's criminal activity, and (c) the defendant was the guilty party. To sustain a conviction, the requirement of independent proof of the *corpus delicti* demands only that the prosecution have introduced independent evidence tending to show (a) and (b). It is not necessary that the independent proof tend to connect the defendant with the crime."

*Lerch*, 296 Or at 393 (quoting *McCormick on Evidence* § 158, 346-47 (2d ed 1972)). In the case of a homicide, for example, the *corpus delicti* consists of evidence (a) that a death has occurred and (b) that the death was caused by someone's criminal activity. *Lerch*, 296 Or at 394. However, in the case of burglary and some other crimes—attempt crimes, for example—determining the extent of the "injury or harm," *id.*

---

[1] Similar circumstances arose in the United States with the case of the Boorn brothers. *The Trial of Stephen and Jesse Boorn*, 6 Am St Tr 73 (1819). In that case, a man disappeared, and Stephen and Jesse Boorn—the man's brothers-in-law—were accused of his murder. Upon arrest and questioning, Jesse accused Stephen. Ultimately, Stephen confessed to the crime. Both brothers were convicted, but Stephen—who had been sentenced to death—insisted that an advertisement be published in an attempt to find the alleged victim. That advertisement ultimately resulted in locating the alleged victim, who apparently disappeared simply because he had grown tired of his wife. Rollin M. Perkins, *The Corpus Delicti of Murder*, 48 Va L Rev 173, 175-76 (1962).

[2] Another approach, taken by the federal courts, is to require "substantial independent evidence which would tend to establish the truthfulness of the [confession]," rather than independent evidence that the crime occurred. *See Opper v. United States*, 348 US 84, 93, 75 S Ct 158, 99 L Ed 101 (1954) (adopting that approach). Oregon has not adopted that approach.

at 393, produced by the given crime is more difficult than it is with crimes like homicide and arson.

■ One general principle that aids us in determining the injury or harm produced by more complex crimes is the principle that "elements affecting only the degree or seriousness of the crime are not part of the *corpus delicti* that needs to be corroborated." Kenneth S. Broun, 1 *McCormick on Evidence* § 147, 602 (6th ed 2006). Thus, for instance, in an aggravated murder case, the state need only corroborate that the death occurred and that the death was the result of someone's criminal agency; the state need not corroborate the additional factor or factors that elevate the crime from murder to aggravated murder. *See State v. Brown*, 310 Or 347, 368, 800 P2d 259 (1990) (requiring corroboration of only death and criminal agency in aggravated murder case). Similarly, manslaughter and murder require the same corroboration—independent evidence of death caused by some criminal agency—despite the fact that to prove murder, the more serious crime, the state must prove a more culpable mental state. *See, e.g.*, *State v. Fischer*, 232 Or 558, 560, 376 P2d 418 (1962) (manslaughter); *State v. Henderson*, 182 Or 147, 190, 184 P2d 392 (1947) (first-degree murder).

With that background in mind, we turn to the particular issue in this case—identifying the elements of second-degree burglary that require corroboration. To obtain a conviction for second-degree burglary, the state must prove, beyond a reasonable doubt, that defendant (1) "enter[ed] or remain[ed] unlawfully in a building," (2) "with intent to commit a crime therein." ORS 164.215(1). Defendant maintains that ORS 136.425(1) requires the state to provide some evidence, independent of his confession, as to both of those elements. The state responds that unlawful entry alone constitutes the "injury or harm" of burglary and, as a result, that it need not corroborate defendant's intent to commit a crime in the unlawfully entered building.

■ We agree with defendant and the Court of Appeals that ORS 136.425(1) requires corroboration of defendant's intent to commit a crime, in addition to corroboration of the unlawful entry. As the Court of Appeals correctly stated, "[a]

defendant's intent to commit a crime at the time of an unlawful entry is central to the crime of burglary." *Chatelain*, 220 Or App at 492. Since the time of Blackstone, the defendant's intent to commit a crime in the building has been the characteristic distinguishing burglary from mere trespass. *See* 4 William Blackstone, *Commentaries on the Laws of England* 227 (1769) ("[I]t is clear, that [the] breaking and entry must be with a felonious intent, otherwise it is only a trespass."). And, under current Oregon law, intent to commit a crime is required to commit any degree of burglary; it continues to be the primary element distinguishing burglary from criminal trespass. *See* ORS 164.245 (person commits second-degree criminal trespass if the person "enters or remains unlawfully in a motor vehicle or in or upon premises"); ORS 164.215 (person commits second-degree burglary if the person "enters or remains unlawfully in a building with intent to commit a crime therein").

The state argues that the foregoing analysis conflicts with the principle that the state is not required to corroborate elements that affect only the degree or seriousness of the crime. The state contends that burglary is merely an aggravated form of criminal trespass, attempting to analogize criminal trespass and burglary to homicide crimes, such as manslaughter and murder. It argues that, although manslaughter and murder have distinct names, the legislature intended murder to be simply an aggravated form of manslaughter, and our opinions have treated it as such. *See Fischer*, 232 Or at 560 (manslaughter); *Henderson*, 182 Or at 190 (first-degree murder). In other words, the state argues that, by corroborating defendant's unlawful entry, the state corroborated the least-serious degree of burglary: criminal trespass.

We disagree. In the case of criminal homicide, the legislature has expressly grouped manslaughter and murder together, despite their distinct names. ORS 163.005 provides, in part:

"(1) A person commits criminal homicide if, without justification or excuse, the person intentionally, knowingly, recklessly or with criminal negligence causes the death of another human being.

"(2) 'Criminal homicide' is murder, manslaughter, criminally negligent homicide or aggravated vehicular homicide."

The legislature has not similarly grouped criminal trespass and burglary together under one overarching label. Instead, the legislature has set out the two crimes under separate statutory schemes and has expressly created a separate structure of seriousness for each crime, using the familiar framework of varying degrees of each crime. *See* ORS 164.215 (second-degree burglary); ORS 164.225 (first-degree burglary); ORS 164.245 (second-degree criminal trespass); ORS 164.255 (first-degree criminal trespass).

It follows from the foregoing that, to satisfy its burden under ORS 136.425(1), the state was required to provide some evidence, independent of defendant's confession, both (1) that defendant entered or remained unlawfully in a building, and (2) that he did so with intent to commit a crime—here, distribution of a controlled substance to a minor—therein.[3]

■ We now turn to the determinative issue in this case—whether the state provided "some * * * proof," aside from defendant's confession, that defendant unlawfully entered the building with intent to commit a crime therein. We emphasize that whether evidence is sufficient to satisfy, ORS 136.425(1) does not present the same question as whether that evidence is sufficient, on its own, to *convict* the defendant. Even so, there must be *some* proof, aside from the confession, as to the relevant facts. More specifically, " 'some proof' means that there is enough evidence from which the jury may draw an inference that *tends* to establish or prove" a relevant fact, *Lerch*, 296 Or at 398 (emphasis added)—here, that defendant unlawfully entered a building with intent to distribute a controlled substance to a minor therein.

■ Because defendant makes no argument that the state failed to adequately corroborate his unlawful entry,[4] we

---

[3] We emphasize that, although the state is required to corroborate the two elements of the crime of second-degree burglary that is at issue in this case, we do not hold, as defendant urges, that the state must corroborate every element of every crime to satisfy ORS 136.425(1).

[4] An eyewitness testified as to the entry, and the homeowner testified that she had not given defendant permission to enter.

must determine, using the standard described above, whether the state provided adequate independent proof of his intent to distribute marijuana to his minor companion once inside.[5] The state points to the following independent evidence to corroborate defendant's confession as to that intent: (1) defendant entered a vacant house early in the morning; (2) defendant and his companion remained inside for about 45 minutes; (3) defendant fled when police arrived and later resisted arrest; (4) defendant exhibited signs of stimulant use and marijuana use upon apprehension; and (5) defendant had two lighters.

As to the first three pieces of evidence, the state argues that that evidence demonstrates that defendant "wanted to remain out of sight," remained in the house for "a sufficient amount of time to use marijuana," and ultimately attempted to escape, demonstrating that he knew that he had engaged in wrongdoing. Certainly, that evidence tends to support an inference that defendant knew he had engaged in *some* wrongdoing. Of course, by entering the house at all, defendant had engaged in wrongdoing.[6] As the Court of Appeals correctly noted, that evidence supports "no *particular* inference * * * about defendant's intent to distribute marijuana" inside the house. *Chatelain*, 220 Or App at 494 (emphasis added). In other words, the evidence does not support an inference as to defendant's *particular* mental state, which is the fact that must be corroborated.

As to defendant's drug use, there is certainly independent evidence that defendant was under the influence of a *stimulant*. However, there is little to no evidence that defendant was under the influence of *marijuana*, the drug that he admitted to giving to his female companion. Although one officer noted that defendant—after an hour long chase and physical struggle with police—"complained of cotton mouth"

---

[5] The indictment charged that defendant entered the house with intent to distribute a controlled substance to a minor therein. However, the state's theory at trial (based on defendant's confession) was that defendant intended to distribute marijuana to his younger companion, rather than any other controlled substance. We therefore refer to defendant's intent to distribute marijuana to a minor rather than his intent to distribute controlled substances generally.

[6] Indeed, defendant admitted that he knew he did not have permission to enter the house and that he should not have gone inside.

and had bloodshot eyes, that same officer opined, based on his observations, that defendant "didn't get a chance to smoke any * * * marijuana." That evidence does not support an inference that defendant intended to or did smoke marijuana himself while inside the house, let alone that he intended to distribute marijuana to his younger companion. The state points to the two lighters that defendant had on his person; however, police found no drugs, drug residue, or drug paraphernalia anywhere in the house, on defendant's person, or in defendant's backpack. The evidence of defendant's stimulant use and his possession of two lighters does not support an inference that defendant intended to distribute marijuana to a minor when he entered the house.

Under ORS 136.425(1), the state was required to present "some" evidence, however slight, apart from defendant's confession, that he unlawfully entered a building with intent to distribute a controlled substance to a minor therein. Because the state failed to do so, the state did not meet its burden under the statute. The trial court erred in denying defendant's motion for judgment of acquittal, and the Court of Appeals correctly remanded to the trial court for entry of conviction for the lesser-included offense of criminal trespass in the second degree.[7]

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

---

[7] On review, the state does not renew the argument, made before the Court of Appeals, that the court should remand for entry of conviction for the lesser-included offense of criminal trespass in the first degree.