Argued and submitted February 11; in Case No. 19CR64410, reversed; in Case No. 19CR71593, affirmed June 15, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BENJAMIN SHELTON McLARRIN,
*Defendant-Appellant.*

Linn County Circuit Court
19CR64410, 19CR71593;
A173476 (Control), A173629

513 P3d 40

In this consolidated case, defendant appeals a judgment of conviction for failure to register as a sex offender, ORS 163A.040(1). In defendant's sole assignment of error, he argues that the trial court erred in denying his motion for judgment of acquittal. In that motion, defendant asserted that the only evidence that supported his conviction was a confession by defendant to an officer that he had been living with his aunt for more than 10 days. Defendant argued that a conviction on the evidence, as presented, would be contrary to ORS 136.425(1), which states that a confession alone cannot be the basis to convict a defendant of an offense. *Held*: The trial court erred in denying defendant's motion for judgment of acquittal because apart from defendant's confession, the evidence did not allow an inference that tended to prove that the injury or harm specified in the crime— that defendant did not register for more than 10 days after moving—occurred.

In Case No. 19CR64410, reversed. In Case No. 19CR71593, affirmed.

Rachel Kittson-MaQatish, Judge.

Rond Chananudech, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Philip Thoennes, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Egan, Judge, and Kamins, Judge.

EGAN, J.

In Case No. 19CR64410, reversed. In Case No. 19CR71593, affirmed.

**EGAN, J.**

Defendant appeals a judgment of conviction for failure to register as a sex offender.[1] ORS 163A.040(1). Under ORS 136.425(1), a confession alone cannot be the basis to convict a defendant of an offense unless there is "legally sufficient corroborating evidence from which the jury could draw an inference that tends to prove that (1) the injury or harm specified in the crime occurred and (2) that this injury or harm was caused by someone's criminal activity." *State v. Nickles*, 299 Or App 561, 563-64, 451 P3d 624 (2019). In defendant's sole assignment of error, he argues that the trial court erred in denying his motion for judgment of acquittal. In that motion, defendant argued that the only evidence that supported his conviction was a confession by defendant to an officer that he had been living with his aunt for more than 10 days. We conclude that, apart from defendant's confession, the evidence did not allow an inference that tended to prove that the injury or harm specified in the crime— that defendant did not register for more than 10 days after moving—occurred. Accordingly, we reverse.

"We review a trial court's denial of a motion for judgment of acquittal to determine whether, after viewing the facts in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. Moreno*, 276 Or App 102, 107, 366 P3d 839, *rev den*, 359 Or 525, *cert den*, ___ US ___, 137 S Ct 342, 196 L Ed 2d 272 (2016). "Only if a defendant's confession is supported by legally sufficient corroborating evidence may both the confession and the independent corroborating evidence be considered in determining whether that standard has been met." *State v. Simons*, 214 Or App 675, 677, 167 P3d 476 (2007), *rev den*, 214 Or App 675 (2008) (citing ORS 136.425(1); *State v. Lerch*, 296 Or 377, 398-99, 677 P2d 678 (1984)).

Defendant was required to report as sex offender. As a part of that requirement, defendant had to report to a

---

[1] This appeal is a consolidated case involving Case Nos. 19CR64410 and 19CR71593. Defendant only seeks review of Case No. 19CR64410. We omit any further discussion of Case No. 19CR71593, as it is not relevant to our conclusion.

law-enforcement office "[w]ithin 10 days of a change of residence." ORS 163A.010(3)(a)(B).[2]

On August 27, 2019, Officer Flores was on patrol when he made contact with defendant. Flores requested dispatch to do a warrant check on defendant. Dispatch informed Flores that defendant was a registered sex offender and that his registered address was at the Helping Hands located in Albany. Flores asked defendant if defendant was still living there, which defendant responded in the affirmative. Afterwards, Flores told defendant that if he moved, to make sure to register.

On September 6, Flores, while on patrol, made contact with defendant again. Flores "struck up a conversation" with defendant "regarding [defendant's] sex offender registry." Flores asked defendant "where he was living." Defendant replied that he was not at Helping Hands anymore— where his residence was registered at that time—rather, defendant stated he "was living at his aunt's house." Flores informed defendant of the obligation to update his registration and ended that contact.

Two days later, on September 8, Flores made a third contact with defendant. Flores asked defendant "about his registration during that contact as well." Defendant told Flores that he "was going to update his sex offender registration to his aunt's house on September 9th, which would have been the next day." Defendant also stated that he did not know the "exact date that he had been living [at his aunt's house,] but [defendant] believed it was less than 10 days."

On September 10, Flores made his fourth contact with defendant over a span of approximately two weeks. Flores asked defendant if he had updated his registration and defendant stated that he had not. Flores asked defendant

_____

[2] ORS 163A.010(3) provides, in part:

"(a) A person described in subsection (2) of this section shall report, in person, to the Department of State Police, a city police department or a county sheriff's office, in the county to which the person was discharged, paroled or released or in which the person was otherwise placed:

"* * * * *

"(B) Within 10 days of a change of residence[.]"

how long he had been living with his aunt and, after a short conversation, defendant stated that he had been living with his aunt for "more than 10 days" and that he had been living at his aunt's house for "probably two weeks."

At that time, defendant was arrested for failing to report as a sex offender. *See* ORS 163A.040(1) ("A person who is required to report as a sex offender in accordance with the applicable provisions of ORS 163A.010 * * * and who has knowledge of the reporting requirement commits the crime of failure to report as a sex offender if the person * * * [m]oves to a new residence and fails to report the move and the person's new address[.]"); ORS 163A.010(3)(a)(B) (requiring registration "[w]ithin 10 days of a change of residence").

Defendant waived his right to a trial by a jury and a bench trial occurred several months later. The state presented the evidence described above, as well as several of defendant's sex offender registration forms, including one that defendant had filled out approximately two months after his arrest, on which he indicated that he had moved on September 7.

After the state rested its case, defendant moved for a judgment of acquittal. As relevant to this appeal, defendant argued that the state failed to provide sufficient evidence that defendant had violated his registration requirement. Specifically, defendant argued that the only evidence that the state provided that would have supported a conviction of defendant for failing to register within 10 days was a confession, which, under ORS 136.427, "alone is not sufficient to prove [an] element."

Defendant noted the difference between confessions and admissions and conceded that defendant made admissions on September 6 and September 8 but argued that the statement that defendant made to Flores on September 10 was a confession. Moreover, defendant argued that the conversations on September 6 and September 8 did not "corroborate the confession * * * that was made on September 10."

The trial court agreed with defendant that his statements on September 6 and September 8 were admissions and that the statements on September 10 were a confession.

Nevertheless, the court denied defendant's motion because the court concluded that the admissions were sufficient to corroborate defendant's confession. Accordingly, the court denied defendant's motion. At the conclusion of trial, the court found defendant guilty, and this timely appeal followed.

On appeal, defendant concedes, and we agree, that defendant's statements on September 6 and September 8 are admissions. Furthermore, the state concedes, and we agree, that defendant's statements on September 10 were a confession. *State v. Hauskins*, 251 Or App 34, 40, 281 P3d 669 (2012) (a statement is a confession "if it is made after the commission of the crime in question, for the purpose of acknowledging that the speaker is guilty of some criminal offense" (internal quotation marks omitted)). With those concessions, defendant argues that defendant's admissions on September 6 and September 8, only "establish that [defendant] had changed his residence on September 6." The state responds that, contrary to defendant's argument, defendant's admissions sufficiently corroborate defendant's confession.

ORS 136.425(2) provides, in part, that "a confession alone is not sufficient to warrant the conviction of the defendant without some other proof that the crime has been committed." The Supreme Court has explained that that statutory provision "codified the common law *corpus delicti* rule.'" *State v. Chatelain*, 347 Or 278, 283, 220 P3d 41 (2009). The purpose of the rule is to require proof—independent of a confession, which may be false—that a crime has actually occurred before a person may be convicted of and punished for that crime. *See id.* ("The *corpus delicti* rule emerged in England in the 1800s, apparently in response to celebrated cases in which alleged murder victims turned up alive after their alleged murderers already had been convicted and hanged for the offenses."). To that end, it requires the introduction of "independent evidence tending to show" that "(a) the injury or harm specified in the crime occurred" and "(b) that injury or harm was caused by someone's criminal activity." *Id.* at 284 (internal brackets and quotation marks omitted).

Given the purpose of the rule and the elements set out as (a) and (b) above, the Supreme Court has explained that "[t]he *corpus delicti* of a given crime does not ordinarily include every element of the crime that the state is required to prove for conviction." *Id.*

"In the case of a homicide, for example, the *corpus delicti* consists of evidence (a) that a death has occurred and (b) that the death was caused by someone's criminal activity. However, in the case of burglary and some other crimes—attempt crimes, for example—determining the extent of the injury or harm produced by the given crime is more difficult than it is with crimes like homicide and arson."

*Id.* at 284-85 (internal citations and quotation marks omitted). Thus, the specific nature of the crime, and its elements, are important to determining what the crime's specified "injury or harm" is and, according, which elements must be corroborated. *Id.* at 285-87 (considering the characteristics of burglary to determine which elements require corroboration); *Nickles*, 299 Or App at 564 (considering in detail the elements of the crime of unlawful possession of a destructive device to determine the sufficiency of corroborating evidence).

"[W]hether evidence is sufficient to satisfy[] ORS 135.425(1) does not present the same question as whether that evidence is sufficient, on its own, to *convict* the defendant. Even so, there must be *some* proof, aside from the confession, as to the relevant facts." *Chatelain*, 347 Or at 287 (emphases in original).

With that background in mind, we begin by considering what "the relevant facts" are in this case, given the crime with which defendant was charged. *Id.* ORS 163A.010(3)(a)(B) requires that people subject to the reporting requirement "shall report, in person" to one of several types of law enforcement agencies in a particular county "[w]ithin 10 days of a change of residence." ORS 163A.040 (1)(d) criminalizes failure to knowingly fail to comply with that reporting requirement, including its 10-day timing requirement. *State v. Fry*, 303 Or App 587, 591, 464 P3d 521 (2020) (the crime of failure to register as a sex offender occurs

"'literally at midnight on the tenth day after the defendant change[s] his residence'" (quoting *State v. Depeche*, 242 Or App 155, 162-63, 255 P3d 502 (2011)).

The injury or harm specified by those provisions is specific: The legislature has not identified injury or harm in a sex offender's act of moving or, after moving, in waiting up to 10 days before reporting. The person's conduct remains innocent, not criminal, until the end of the tenth day. Thus, the injury or harm specified by ORS 163A.010(3)(a)(B) and ORS 163A.040(1)(d) is the harm to the public caused by a sex offender's act of waiting *more than 10 days* after changing residences without reporting.[3]

Accordingly, for our purposes here, the "relevant fact" of which there had to be "*some* proof, aside from the confession," *Chatelain*, 347 Or at 287, is that defendant did not report for *more than 10 days* after moving to his aunt's house. *See id.* at 286 (holding that evidence tending to establish or prove that, when the defendant entered a building, he intended to commit a crime, was necessary to corroborate his confession because "the defendant's intent to commit a crime in the building [is] the characteristic distinguishing burglary from mere trespass"). *Cf. Nickles*, 299 Or App at 565 (because the statute at issue did not prohibit possession of all explosive devices, evidence that the defendant had been injured in an explosion did not tend to show that the injury was a result of criminal activity).

Next we consider what it means for there to be "*some* proof, aside from the confession" that defendant failed to report for more than 10 days. *Chatelain*, 347 Or at 287 (emphasis in original); ORS 136.425(1). The Supreme Court has explained that, in this context, "'some proof means that there is enough evidence from which the jury may draw an inference that *tends* to establish or prove' a relevant fact." *Chatelain*, 347 Or at 287 (quoting *Lerch*, 296 Or at 398 (emphasis in *Chatelain*)). As explained below, although the independent evidence need not conclusively establish the relevant fact or facts, it is clear from both the Supreme Court's

---

[3] There is no dispute that, if that harm befell the public in this case, it was caused by criminal activity, so we do not consider the second prong of the *corpus delicti* rule.

and our own case law that the evidence must, in some way, tend to establish the existence of the relevant fact in particular, rather than being consistent with either the presence of that fact or its absence. Moreover, circumstantial evidence that is consistent with the existence of the relevant fact—even if it might lead a juror to suspect that the relevant fact is one explanation for the circumstances—is not enough to meet the corroboration standard under ORS 136.425(1).[4]

For example, in *Nickles*, the defendant's hand was injured when a homemade explosive device exploded while he was holding it. He confessed that the device had characteristics that made it an unlawful explosive device. *Id.* at 562-63. We explained that not all explosive devices are unlawful; for example, "a bomb—which would normally be unlawful to possess—can nonetheless be permissible to possess if it was prepared for the primary purpose of producing a visible or audible effect." *Id.* at 564. The state argued that the injuries to the defendant's hand, which were consistent with something exploding in his hand, corroborated the defendant's confession because they showed that he had possessed an explosive device. *Id.* at 565.

We rejected that argument, explaining that the "defendant's injuries do not assist the state in establishing that the injury was caused by criminal conduct rather than by one of the myriad noncriminal causes of traumatic hand injuries." *Id.* Specifically, we explained,

> "Without relying on defendant's confession for additional information about the explosion, a jury would be left to speculate as to the cause of his hand injury and whether it had resulted from the explosion of an illegal device or, instead, something else, such as a firework or a highly pressurized device that defendant lawfully could possess."

*Id.* The independent evidence did not tend to establish the existence of the relevant fact—that the defendant's injury was caused by an *unlawful* explosive device. Rather, the injury to the defendant's hand could have been caused by

---

[4] Both of those principles are consistent with the original purpose of the *corpus delicti* rule, which, as noted above, was to prevent convictions based on false confessions for crimes that have not occurred despite circumstances that are consistent with the possibility that the crimes may have occurred.

possession of an unlawful explosive device or possession of a lawful explosive device. Accordingly, evidence of the injury did not adequately corroborate the defendant's confession. *Id.* at 566.

In *State v. Simon*, 214 Or App 675, 686-87, 167 P3d 476 (2007), *rev den*, 344 Or 43 (2008), there was ample evidence that the defendant, who worked at an assisted living facility and had confessed to numerous sex crimes against its residents, "had private, unsupervised access to" the victims, "was sensitized to the sexual behavior of his patients, *** was sexually attracted to older women, and *** acted on that attraction in his conduct with his coworkers." Although that evidence showed that the defendant had the opportunity and motive to commit the crimes, we held that it nevertheless did not corroborate the defendant's confession because it did not "support a reasonable inference that [the victims] suffered harm." *Id.* at 687. That is, although that circumstantial evidence was consistent with the existence of the relevant facts—that the defendant had sexually assaulted the victims in the specific ways alleged—that did not serve the purpose of the corroboration rule because the evidence lacked the specificity required to make it tend to show that crimes had actually taken place. *See also State v. Delp*, 281 Or App 17, 29, 178 P3d 259, *rev den*, 345 Or 317 (2008) ("None of the evidence offered by the state independent of the confession[—evidence of the defendant's sexual interest in children, opportunity to commit the crimes, and the existence of a towel mentioned in the confession—]tends to demonstrate or gives rise to an inference that the alleged victim was the subject of the specific acts of sodomy and sexual abuse set forth in the indictment.").

In *Chatelain*, the Supreme Court evaluated whether "the state provided adequate independent proof of [the defendant's] intent to distribute marijuana to his minor companion" once they had unlawfully entered a house to make the unlawful entry into burglary. 347 Or at 288. The state argued that evidence that the defendant and the companion had entered the house early in the morning and remained inside for 45 minutes and that the defendant fled when the police arrived, exhibited signs of stimulant use

and marijuana use upon apprehension, and had two lighters with him, adequately corroborated his intent. *Id.*

The Supreme Court disagreed. It explained that the first three pieces of evidence "tend[ ] to support an inference that defendant knew he had engaged in *some* wrongdoing," but that that evidence "does not support an inference as to defendant's *particular* mental state, which is the fact that must be corroborated." *Id.* (emphases in original). As to the other two pieces of evidence, the court explained that "[t]he evidence of defendant's stimulant use and his possession of two lighters does not support an inference that defendant intended to distribute marijuana to a minor when he entered the house." *Id.* at 289. Thus, the court concluded that the state had failed to adequately corroborate the defendant's intent to distribute marijuana to a minor. *Id.*

With the understanding that the independent evidence must support an inference, with particularity, as to the fact that must be corroborated, *Chatelain*, 347 Or at 288, we turn to the independent evidence that the state provided in this case, to determine whether it supports an inference that defendant did not report for more than 10 days after moving to his aunt's house:

- On August 27, 2019, defendant told Flores that he was living at Helping Hands.

- On September 6, 2019, defendant told Flores that he was not at Helping Hands anymore and that he "was living at his aunt's house."

- On September 8, 2019, defendant told Flores that he "was going to update his sex offender registration to his aunt's house *** the next day." Defendant also stated that he did not know the "exact date that he had been living [at his aunt's house,] but [defendant] believed it was less than 10 days."

On September 10, defendant confessed that he had lived at his aunt's residence for over 10 days, and he was arrested.

To corroborate defendant's confession that, as of September 10, he had committed the crime by failing to report within 10 days of changing his residence, the

independent evidence must tend to establish that he moved to his aunt's house more than 10 days before that date—on or before August 31. As explained above, the independent evidence need not conclusively establish that defendant moved on or before August 31, but it must tend to establish the existence of that fact in particular, rather than being consistent either with defendant having moved on or before August 31 (in which case a crime occurred) or with defendant having moved on or after September 1 (in which case no crime occurred).

Defendant's statements on August 27 and September 6 establish that he moved to his aunt's house sometime between August 27 and September 6. That evidence makes it no more likely that defendant moved on or before August 31 than that he moved on or after September 1; he could have moved during either time period, and the evidence says nothing one way or the other.

Defendant's September 8 statements do not change that situation. On September 8, defendant said that he "was going to update his sex offender registration to his aunt's house *** the next day" and that he did not know the "exact date that he had been living [at his aunt's house,] but [defendant] believed it was less than 10 days." Although those statements are consistent with the possibility that he moved on or before August 31, in which case defendant would have been living at his aunt's house for at least nine days at that point, they are equally consistent with the possibility that he moved on or after September 1, in which case defendant would have been living at his aunt's house for up to 8 days at that point. Without relying on defendant's confession for additional information about defendant's moving date, a jury would be left to speculate as to the date of his move and, thus, as to whether a crime had been committed or not. *See Nickles*, 299 Or App at 565.

In sum, there was insufficient corroborating evidence to support defendant's confession, and, accordingly, we conclude that the trial court erred in denying defendant's motion.

In Case No. 19CR64410, reversed. In Case No. 19CR71593, affirmed.